<table>
<tr><td colspan="2">

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

FORMAN HOLT
365 West Passaic Street, Suite 400
Rochelle Park, NJ 07662
Tel: (201) 845-1000
Attorneys for Debtor
Michael E. Holt, Esq.
mholt@formanlaw.com

</td></tr>
<tr><td>

In Re:

RE-TRON TECHNOLOGIES, INC.,

                  Debtor.

</td><td>

Case No.:  24-19193 (VFP)

Chapter 11 (Small Business Subchapter V)

Hon. Vincent F. Papalia

</td></tr>
</table>

## SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

This Small Business Plan of Reorganization (the "Plan") is presented to you to inform you of the proposed Plan for restructuring the debts of Re-Tron Technologies, Inc. (the "Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____, 2025 BY ____ P.M.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____, 2025.  THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:   FORMAN HOLT, 365 WEST PASSAIC STREET, SUITE 400, ROCHELLE PARK, NJ 07662, ATTN: MICHAEL E. HOLT, ESQ.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, 2025 at _____a.m.  BEFORE THE HONORABLE VINCENT F. PAPALIA, COURTROOM NO. 3_, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY, 50 WALNUT STREET, NEWARK, NEW JERSEY 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated: December 16, 2024

FORMAN HOLT
Attorneys for Debtor


By:/s/ Michael E. Holt
    Michael E. Holt

## **TABLE OF CONTENTS**

SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION ....................................................................1

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ...............................................3

ARTICLE 1 .........................................................................................................................................................5

HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR .................................................................5

    **1.1**    **Nature of the Debtor's Business.** ...........................................................................................**5**

    **1.2**    **History of Business Operations of the Debtor** ...................................................................**5**

    **1.3**    **Filing of the Debtor's Chapter 11 Case.** ............................................................................**6**

    **1.4**    **Legal Structure and Ownership.** ........................................................................................**6**

    **1.5**    **Debtor's Assets.** ..................................................................................................................**6**

    **1.6**    **Debtor's Liabilities.** ............................................................................................................**6**

    **1.7**    **Current and Historical Financial Conditions.** ..................................................................**6**

    **1.8**    **Events Leading to the Filing of the Bankruptcy Case.** ...................................................**6**

    **1.9**    **Significant Events During the Bankruptcy Case.** ............................................................**7**

    **1.10**    **Projected Recovery of Avoidable Transfers** ....................................................................**7**

ARTICLE 2 .........................................................................................................................................................7

THE PLAN ...........................................................................................................................................................7

    **2.1**    **Unclassified Claims.** ...........................................................................................................**8**

    **2.2**    **Classes of Claims and Equity Interests.** ..........................................................................**10**

    **2.3**    **Estimated Number and Amount of Claims Objections** ..................................................**13**

    **2.4**    **Treatment of Executory Contracts and Unexpired Leases** ...........................................**13**

    **2.6**    **Payments.** ...........................................................................................................................**13**

    **2.7**    **Post-Confirmation Management.** .....................................................................................**14**

    **2.8**    **Tax Consequences of the Plan.** .........................................................................................**14**

    **2.9**    **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan** ..................**14**

ARTICLE 3 .........................................................................................................................................................14

FEASIBILITY OF PLAN ...................................................................................................................................14

    **3.1.**    **Ability to Initially Fund Plan.** ...........................................................................................**14**

    **3.2.**    **Ability to Make Future Plan Payments and Operate Without FurtherReorganization.** .....................**14**

ARTICLE 4 .........................................................................................................................................................15

LIQUIDATION ANALYSIS. .............................................................................................................................15

ARTICLE 5 .........................................................................................................................................................15

DISCHARGE OF DEBTOR ...............................................................................................................................15

    **5.1**    **Discharge** ..............................................................................................................................**15**

ARTICLE 6 .........................................................................................................................................................15

GENERAL PROVISIONS ..................................................................................................................................15

i

**6.1    Title to Assets.** ................................................................................................................**15**

**6.2    Binding Effect.** ...............................................................................................................**15**

**6.3    Severability** ...................................................................................................................**16**

**6.4    Retention of Jurisdiction by the Bankruptcy Court** .....................................................**16**

**6.5    Captions.** ........................................................................................................................**16**

**6.6    Modification of Plan.** .....................................................................................................**16**

**6.7    Final Decree.** ..................................................................................................................**16**

ARTICLE 7 ...................................................................................................................................17

ATTACHMENTS ..........................................................................................................................17

ARTICLE 8 FREQUENTLY  ASKED QUESTIONS ...................................................................17

ARTICLE 9 DEFINITIONS .........................................................................................................19

## **SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

The Debtor proposes to make *pro rata* distributions consistent with the priorities of the Bankruptcy Code and the terms of this Plan.  Tron Management, LLC, a Wyoming limited liability company (the "Purchaser"), purchased substantially all the Debtor's assets for $275,000 payable in equal monthly installments over three years, plus interest at 5% *per annum,* consistent with an April 26, 2024, asset purchase agreement (the "APA") and promissory note (the "Note") between the Debtor and Purchaser.  Debtor will use the installment payments from Purchaser under the APA and the Note to make *pro rata* distributions to creditors for 36 months after the Effective Date under this Plan.  In addition, Purchaser will assume certain of Debtor's obligations under this Plan.

The Plan establishes 6 Classes of Claims, each of which is impaired.  Class 1 Claims consist of the Debtor's pre-petition secured debt to ConnectOne Bank ("ConnectOne") which totaled $44,205.01 as of the Petition Date.    Class 1 Claims are secured by the Debtor's remaining physical assets, if any, general tangibles and intangibles, cash, accounts receivable, and future receipts.  The Plan proposes for the Purchaser to assume the Debtor's obligations to ConnectOne and to pay ConnectOne $3,123.86 per month together with interest at the contract interest rate until the Class 1 Claims are paid in full.

Class 2 Claims consist of the Debtor's pre-petition secured debt to ODK Capital LLC ("ODK") which is subject to a settlement agreement and a judgment in the Bergen County Superior Court with a balance due of $198,773.47  as of the Petition Date.  The Plan proposes for the Debtor to pay ODK $5,521.49 per month without  interest until the earlier of 36 months after the Plan Effective Date or when the Class 2 Claims are paid in full.  The

balance owed to the holders of Class 2 Claims, if any, after all payments are made under the Plan shall be assumed by the Purchaser.

Class 3 Claims consist of the Debtor's pre-petition secured debt to the U.S. Small Business Administration ("SBA") which totaled $537,386.40 as of the Petition Date. The Plan proposes for the Debtor to pay the SBA $2,515.00 per month together with interest at the contract interest rate until the earlier of 36 months after the Plan Effective Date or when the Class 3 Claims are paid in full. The balance owed to the holders of Class 3 Claims, if any, after all payments are made under the Plan shall be assumed by the Purchaser.

Class 4 Claims consist of priority unsecured claims against the Debtor that are referred to in Sections 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code. The Debtor is unaware of any Class 4 Claims. If there are allowed Class 4 Claims against the Debtor, they will be paid in full on the Effective Date.

Class 5 Claims consist of all general unsecured claims against the Debtor. Holders of allowed Class 5 Claims shall be paid their *pro rata* share of the balance of the funds paid to the Debtor under the APA and the Note after satisfaction in full of the claims in Classes 1 through 4 above. The Debtor anticipates that there will be no distributions to the holders of Class 5 Claims under the Plan.

Class 6 consists of the Debtor's equity interest holders. The holders of Class 6 equity interests shall retain such equity interests upon confirmation of the Plan. .

Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date unless such holder consents to different treatment. Fees owed, if any, to the Office of the United States Trustee will be paid in full on the Effective Date.

4

Holders of priority tax claims under Section 507(a)(8) of the Bankruptcy Code, if any, will receive payment in full plus interest at 5% per annum in regular semi-annual installments over a period not exceeding five years from the Petition Date.  The Debtor does not anticipate there are allowed priority tax claims.

## ARTICLE 1

### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1      Nature of the Debtor's Business.

The Debtor is a New Jersey corporation that operated a battery service and maintenance business servicing date center backup systems.  The Debtor operated its business at 220 West Parkway, Unit 12, Pompton Plains, NJ 07444.

### 1.2      History of Business Operations of the Debtor

The Debtor was formed in July 2009 and has operated out of the following locations:

a)   835 State Route 5, Ridgefield, NJ from July 2009 to November 2012
b)  487 Washington Avenue, Carlstadt NJ from November 2012 to April 2016

c)  620 Gotham Parkway, Carlstadt NJ from April 2016 to October 2023

d)  220 West Parkway Unit 12, Pompton Plains NJ from October 2023 to present

Beginning in 2020, the COVID pandemic caused a major disruption to the profitable services provided by the Debtor.  The Debtor also became involved in a dispute with the landlord for its Carlstadt, NJ location, which required that the Debtor relocate to its current location.  The Debtor undertook efforts to restructure its business, including the sale of its assets to Purchaser.  The Debtor obtained an appraisal of its physical assets, which reflected a forced liquidation value of those assets of $67,905.00 as of May 21, 2024.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On September 17, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. The Chapter 11 case is pending in the United States Bankruptcy Court for the District of New Jersey.

### 1.4    Legal Structure and Ownership.

The Debtor is a New Jersey corporation whose shareholders are Andrew Latham (77.53%), Christian Schaffroth (14.98%), and Shane West (7.49%).

### 1.5    Debtor's Assets.

The Debtor's assets as of the Petition Date consisted primarily of amounts owed to the Debtor by the Purchaser under the APA and the Note.

### 1.6    Debtor's Liabilities.

The Debtor's secured claims consist of the claims of ConnectOne, ODK, and the SBA. The Debtor also leases vehicles and equipment from Leaf Capital Funding LLC, which were not conveyed to Purchaser under the APA, but which will be assumed and assigned to Purchaser under 11 U.S.C. § 365. The Debtor has no tax debt or other priority debt under 11 U.S.C. § 507. The general unsecured claims against the Debtor total $1,434,001.72 as of the Petition Date.

### 1.7    Current and Historical Financial Conditions.

The Debtor was formed in July 2009 and operated profitably until 2020.

### 1.8    Events Leading to the Filing of the Bankruptcy Case.

The Debtor attempted to restructure its assets and liabilities outside of a chapter 11 bankruptcy case. However, litigation commenced by the Debtor's former landlord and others necessitated the Debtor's chapter 11 filing.

### 1.9    Significant Events During the Bankruptcy Case.

Significant events during the Debtor's bankruptcy case include:

a)  The Debtor commenced its bankruptcy proceeding by filing a voluntary petition under the provisions of Subchapter V of Chapter 11 of the United States Bankruptcy Code on September 17, 2024 [Dkt. No. 1].

b)  On September 20, 2024, Mark Politan was appointed as the Debtor's Subchapter V Trustee. [Dkt. No. 3].

c)  On October 23, 2024, the Debtor attended a meeting of creditors pursuant to the provisions of 11 U.S.C. §341.

d)  On October 31, 2024, the Court entered an order authorizing the Debtor to retain Forman Holt as its attorneys. [Dkt. No. 15].

e)  On November 13, 2024, the Court entered an order authorizing the Debtor to retain Sean Raquet CPA, LLC as its accountants.  [Dkt. No. 21].

### 1.10   Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent transfer, or other avoidance actions.

## ARTICLE 2

## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claimsare not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or rejectthe Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3)

in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors.

2.    If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $ 0.00 | Will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors. |
| Goods purchased within 20 days before the Petition Date in the ordinary course of business | $ 0.00 | Will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors. |
| Professional fees, as approved by the Bankruptcy Court due to the Debtor's counsel, Forman Holt | The Debtor estimates an obligation of $30,000 less credit for the $5,000 retainer. | After Bankruptcy Court approval, payment in full on the Effective Date, or as may otherwise be agreed by the parties. |
| Professional fees, as approved by the Bankruptcy Court due to the Debtor's accountants, Sean Raquet CPA, LLC | The Debtor estimates an obligation of $5,000. | After Bankruptcy Court approval, payment in full on the Effective Date, or as may otherwise be agreed by the parties. |
| Subchapter V Trustee Fees | The Debtor estimates an obligation of $10,000 | After Bankruptcy Court approval, payment in full on the Effective Date. |
| Clerk's Office fees | Clerk's office fees are estimated to be $0.00 or nominal | Paid in full on the Effective Date. |

B.  Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim,

in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Treatment |
|---|---|---|
| None | $0 | None |

## 2.2    Classes of Claims and Equity Interests.

The following are the voting classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured Claim of ConnectOne Bank secured by a first lien on all of the Debtor's assets.  Allowed Amount = $44,205.01 based on the Debtor's book value of the liability. | No | Impaired | Obligation shall be assumed by Purchaser and Purchaser shall pay $3,123.86 per moth together with interest at the contract interest rate until the Claim is paid in full. |

| 2 | Secured Claim of ODK Capital LLC<br><br>Allowed Amount = $198,773.47 based on the Debtor's book value of the liability. | No | Impaired | Debtor shall pay $5,521.49.00 per month together with interest at the contract interest rate until the earlier of 36 months after the Plan Effective Date or until the Claim is paid in full.  The balance owed, if any, after all payments are made under the Plan shall be assumed by the Purchaser. |
| 3 | Secured Claim of the U.S. Small Business Administration.  _.<br><br>Allowed Amount = $2537,836.40 based on the Debtor's book value of the liability. | No | Impaired | Debtor shall pay $2,515.00 per month together with interest at the contract interest rate until the earlier of 36 months after the Plan Effective Date or until the Claim is paid in full.  The balance owed, if any, after all payments are made under the Plan shall be assumed by the Purchaser. |

B.         Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Priority Unsecured Claims – Debtor anticipates there are no Class 4 Claims. | Unimpaired | Allowed Class 4 Claims will be paid in full on the Effective Date. |

C.   Classes of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class[es] through, which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | General Unsecured Claims | Impaired | Pro-rata payment of balance of funds paid to the Debtor under the APA and Note after satisfaction of Class 1, 2, 3, and 4 Claims  It is anticipated that there will be no distributions to holders of Class 5 Claims. |

D.   Classes of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

F0235363 - 1                                      12

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 6 | Equity Interest Holders | Impaired | Class 6 Equity Interest Holders shall retain their equity interests upon confirmation of the Plan. |

### 2.3    Estimated Number and Amount of Claims Objections

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claims objected to will be treated as Disputed Claims under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

The Debtor intends to object to an estimated priority tax claim filed by the Internal Revenue Service  in this case.

### 2.4    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions  regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Debtor is filing a motion to assume the unexpired lease with Leaf Capital Funding LLC and with the Debtor's current landlord and assign those leases to Purchaser. .

### 2.5    Means for Implementation of the Plan.

The Debtor will dedicate all funds received under the APA and the Note to fund its obligations under this Plan.  The Debtor has no ongoing business operations.

### 2.6    Payments.

Except to the extent that Purchaser is assuming certain obligations of the Debtor, the Debtor shall make the required payments under the Plan from the proceeds of the APA and Note with Purchaser.

F0235363 - 1

### 2.7    Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| Andrew Latham | President | N/A |

### 2.8    Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

There are no anticipated tax consequences to the Debtor as a result of the Plan since it is a single member limited liability company and a disregarded entity for tax purposes. Creditors and Equity Interest Holders should consult their own tax professionals to consider the consequences of the liquidation, discharge, and the general tax consequences of the receipt of Plan consideration after Confirmation.

### 2.9    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information. Those projections are listed in Exhibit A.

## ARTICLE 3

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in thePlan.

### 3.1.    Ability to Initially Fund Plan.

The Plan contemplates that the Debtor will use the amounts owed to the Debtor the Purchaser under the APA and the Note to fund the Plan.

### 3.2.    Ability to Make Future Plan Payments and Operate Without Further Reorganization.

The Plan contemplate that the Debtor will utilize all amounts received under the APA and the Note to fund the Plan.  Accordingly, the Debtor is not required to demonstrate an ability to make future plan payments or operate without further reorganization.

## ARTICLE 4

## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit B**. The liquidation analysis reflects that the claims if the Debtor's secured creditors exceed the value of the Debtor's assets. In a Chapter 7 liquidation, it is likely that a Chapter 7 trustee would abandon the Debtor's assets and that there would be no distributions to creditors. The Plan provides for greater payment to creditors than they otherwise would receive in a Chapter 7 liquidation.

## ARTICLE 5

## DISCHARGE OF DEBTOR

### 5.1    Discharge

No Discharge.  In accordance with the Bankruptcy Code, the Debtor will not receive a discharge of debt in this bankruptcy case upon the Effective Date.

## ARTICLE 6

## GENERAL PROVISIONS

### 6.1    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Reorganized Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors and the Debtor, except as otherwise provided herein.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, all property of the estate shall revest in the Reorganized Debtor in the upon the Effective Date of the Plan.

### 6.2    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or

referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity and equity holders.

### 6.3    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under § 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5    Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6    Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under § 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under § 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7

## ATTACHMENTS

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[X]  Financial forecast for the Debtor, annexed as **Exhibit A**.
[X]  Liquidation Analysis, annexed as **Exhibit B.**
[ ]   Debtor's Assets at Fair Market Value Appraisal [To be Provided]
[X]  Debtor's Liabilities, annexed as **Exhibit C**.
[X]  Debtor's most recent financial statements issued before bankruptcy, annexed as **Exhibit D**.
[X]  Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as **Exhibit E**.
[ ]   Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit __.
[ ]   Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit __.
[ ]   Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit _.
[ ]   Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit __.
[X]  Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as **Exhibit F**.

## ARTICLE 8

## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of liquidation, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**  To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim

is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured.  The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class.  If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings.  Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 of the Plan identifies the classes of creditors whose claims are  impaired.   If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is_____.  Ballots should be mailed to the following address: Michael E. Holt, Esq., Forman Holt, 365 West Passaic Street, Suite 400, Rochelle Park, NJ 07662

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

# ARTICLE 9

## DEFINITIONS

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**9.1    Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.2    Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.3    Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under § 507(a)(2) of the Code and allowed under § 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.4    Administrative Expense Bar Date:** The first business day that is 30 day after the Effective Date.

**9.5    Administrative Tax Claim**: Any tax incurred pursuant to § 503(b)(1)(B) of the Code.

**9.6    Allowed Claim**: Any claim against the Debtor pursuant to § 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7    Allowed Administrative Expense Claim:**  a claim allowed under § 503(b).

**9.8    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.9**    **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.10**    **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.11**    **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.12**    **Bankruptcy Court:** The United States Bankruptcy Court for the District of New Jersey.

**9.13**    **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**9.14**    **Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.15**    **Chapter 11 Case:** This case under Chapter 11 of the Bankruptcy Code in which Re-Tron Technologies, Inc. is the Debtor-in-Possession.

**9.16**    **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.17**    **Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.18**    **Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

**9.19**    **Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.20    Confirmation Hearing:** The hearing to be held on _____, 2024 to consider confirmation of the Plan.

**9.21    Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.22    Creditor:** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.23    Debtor and Debtor-in-Possession:** Re-Tron Technologies, Inc. is the debtor-in-possession in this Chapter 11 Case.

**9.24    Disputed Claim:** Any claim against the Debtor pursuant to § 502 or § 503 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.25    Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.26    Effective Date:** Pursuant to D.N.J. LBR 3020-1, the effective date of a Chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.27    Equity Interest:** An ownership interest in the Debtor.

**9.28    Executory Contracts:** All unexpired leases and executory contracts as described in § 365 of the Bankruptcy Code.

**9.29    Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.30    IRC:** The Internal Revenue Code.

**9.31    Petition Date:** September 17, 2024, the date the Chapter 11 petition for relief was filed.

**9.32    Plan:** This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.33    Priority Tax Claim:** Any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

**9.34    Reorganized Debtor:** The Debtor after the Effective Date.

**9.35    Schedules:** Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.36    Secured Creditor:** Any creditor that holds a Claim that is secured by property of the Debtor.

**9.37    Trustee:** Joseph L. Schwartz, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.38    Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,
FORMAN HOLT
Attorneys for Debtor

By: /s/ Michael E. Holt
        Michael E. Holt

## EXHIBIT A

## FINANCIAL PROJECTIONS

### Revenue

|  | 2025 | 2026 | 2027 |
|---|---|---|---|
| Note: | $98,904.00 | $98,904.00 | $98,904.00 |

### Disbursements

|  | 2025 | 2026 | 2027 |
|---|---|---|---|
| Plan Payments: | $96,437.88 | $96,437.88 | $96,437.88 |

F0235363 - 1

**EXHIBIT B**

**LIQUIDATION ANALYSIS**
[Pursuant to 11 U.S.C. § 1190(1)(B)]

*Debtor's Estimated Liquidation Value of Assets*

**Assets:**

| Receipts | Estimated Value |
|---|---|
| Bank Accounts | $5,000.00 |
| Security Deposit | $0.00 |
| Accounts Receivable | $0.00 |
| Leased Vehicles | $0.00 |
| Leased Equipment | $0.00 |
| Notes Receivable | $225,000.00 |
| | |
| ***Total Assets at Liquidation Value*** | ***$230,000.00*** |

**Less**:

| Secured Claims | |
|---|---|
| ConnectOne Bank | $44,205.00 |
| ODK Capital LLC | $198,773.00 |
| US SBA | $537,386.00 |
| | |
| ***Total Secured Claims*** | ***$780,364.00*** |
| | |
| ***Net Equity*** | ***($550,364.00)*** |

| Estimated Administrative Claims | |
|---|---|
| Chapter 7 Trustee Commission on $230,000 | $14,750.00 |
| Chapter 7 Trustee Professionals | $20,000.00 |
| Chapter 11 Professionals | $35,000.00 |
| | |
| ***Total Administrative Claims*** | ***$69,750.00*** |
| | |
| ***Net Available for Unsecured Creditors in Chapter 7*** | ***($620,114.00)*** |

F0235363 - 1